The bill of complaint was filed for the purpose of establishing a trust in twenty $100 United States War Savings Bonds, Series E.
Mahlon H. Smith, the decedent, died on October 11th, 1942. Between April 15th, 1942, and the time of his death, he purchased for cash twenty bonds of the kind above mentioned. These purchases were made through the First National Bank of Morristown and, at his request, were issued in his name as the registered owner payable on his death to the defendant, Nellie Danko, his friend.
During this period the decedent owned and operated a small confectionery business, the value of which, at the date of his death, was $500. He was indebted to a number of creditors, some of whom held judgments, which indebtedness amounted to about $3,500.
The fact that decedent owned the said bonds in question was not discovered until after his death when the administrators found an envelope on which was noted the dates when the several bonds had been purchased. The defendant was in possession of the bonds at the time of decedent's death and forwarded them to the Treasury Department for payment pursuant to the terms of the said bonds. The complainants, administrators of their father's estate, and Laura Smith, the widow of the decedent, who sues as a creditor, having an assignment of one of the judgments which had been recovered against her husband, filed a caveat with the defendant and then brought this suit.
The complainants maintain that the purchase of the bonds by the decedent was a fraudulent transfer within the meaning of R.S.25:2-10.
There was no "conveyance" as that term is defined in R.S.25:2-7. There was no change in the amount of decedent's assets by reason of his bond purchases as he simply exchanged cash for bonds. He did not part with any assets by that transaction. His financial worth was not depleted or cut down by the purchases. If anything, it was improved by the conversion of cash into government securities which increased in value as time went on. There was no transfer. The assets *Page 562 
represented by the bonds remained under the control of the decedent as a matter of law. The mere fact that he gave the physical custody of the certificates to the defendant does not alter the situation since she could not, in his lifetime, exercise any right of ownership in them. During his lifetime he was both the legal and the equitable owner thereof. In the next place there was no fraud shown. The complainants argue that the decedent concealed his ownership in the bonds with the object of defrauding his creditors. This may be or may not be so. There is no affirmative proof that the decedent had a fraudulent purpose in mind. Actual fraud cannot be presumed, it must be proved.Conway v. Raphel, 101 N.J. Eq. 495; affirmed, 102 N.J. Eq. 531; Wolosin v. Iavarone, 112 N.J. Eq. 409.
Complainants contend that had not the purchases of the bonds been concealed, a judgment creditor could have levied on them for the purpose of satisfying its claim. No judgment creditor, during decedent's lifetime, ever attempted to examine the decedent in order to discover the existence of assets upon which a levy could be made. In the absence of such a showing, I have no right to assume that if the decedent had been examined he would not have disclosed his ownership of the bonds.
I have, therefore, reached the conclusion that the purchase of the bonds was not a fraudulent transaction which now can be set aside by the complainants.
Although the decedent was, in his lifetime, the sole owner of the bonds in question, his title as such owner terminated on his death and the defendant, as the beneficiary named in the respective bonds, thereupon became the sole and absolute owner.Franklin Washington Trust Co. v. Beltram, 133 N.J. Eq. 11.
The question is not one involving an attempted gift intervivos, which is the view expressed by the majority of the Supreme Court of Washington in Decker v. Fowler, 199 Wn. 549; 92 Pac. Rep. 2d 254, the applicability of which case was denied by Vice-Chancellor Bigelow in the Beltram opinion. The ownership of these bonds turns upon the proper application of settled rules of the law of contracts. There *Page 563 
was here, as is pointed out in the dissenting opinion of Decker
v. Fowler, supra, a contract between the decedent and the government, by the terms of which the defendant, as registered beneficiary, acquired a present vested, though defeasible interest contemporaneous with the superior rights of the decedent, and his death terminated his rights and left the defendant with an indefeasible ownership entitling her to demand payment of the proceeds.
Decree for the defendant.