70 N.J. Super. 116 (1961)
175 A.2d 222
BENJAMIN L. BENDIT, EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF SALVATORE LA SPADA, DECEASED, PLAINTIFF-RESPONDENT,
v.
CARMELLA INTARANTE AND CONCETTA INTARANTE, DEFENDANTS-APPELLANTS, AND VERONICA (RONNIE) LA SPADA AND SOMERSET BUS CO., INC., ETC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1961.
Decided November 8, 1961.
*118 Before Judges CONFORD, FREUND and LABRECQUE.
Mr. Aaron Narol argued the cause for appellants.
Mr. Edward R. McGlynn argued the cause for plaintiff-respondent (Messrs. McGlynn, Stein & McGlynn, attorneys).
Mr. Edmund W. Nulton argued the cause for defendant-respondent Somerset Bus Co., Inc. (Messrs. Lindabury, McCormick & Estabrook, attorneys).
Mr. Milton Lowenstein argued the cause for defendant-respondent Veronica La Spada (Messrs. Kristeller, Zucker, Lowenstein & Cohen, attorneys).
The opinion of the court was delivered by LABRECQUE, J.S.C. (temporarily assigned).
The defendants Carmella Intarante and Concetta Intarante appeal from a summary judgment entered in favor of the defendant Veronica La Spada, holding that an agreement entered into between defendant Somerset Bus Co., Inc. and plaintiff's decedent, Salvatore La Spada, was not testamentary in nature and that by reason thereof Mrs. La Spada was entitled to the weekly payments provided for therein.
The decedent, Salvatore La Spada, husband of Veronica La Spada, had formerly been the owner of a bus operation known as Green Flyer, Inc. On June 28, 1957, he agreed to sell his stock and turn over the operation to Somerset Bus Co., Inc. The contract was embodied in a written agreement and a letter of the same date, providing as follows:
*119 "This Agreement entered into this 28th day of June, 1957, by and between Somerset Bus Co., Inc., hereinafter referred to as the `Company,' and Salvatore La Spada, hereinafter referred to as `La Spada.'
In consideration of the sum of One Dollar and other good and valuable consideration, the parties hereto agree, as follows:
1. The Company hereby retains La Spada as a technical advisor for a period of ten years at a stipend of One Hundred Dollars per week commencing July 1, 1957.
2. The Company further agrees that in the event that La Spada fails to survive for said ten year period, that it will, after La Spada's death continue said weekly payments to his wife, Veronica La Spada, for the balance of the terms of this agreement.
The parties agree that this contract is irrevocable.
 Attest:
 G.M. Noll
 Secretary
 Sommerset Bus Co., Inc.
 By: F.J. Noll,
 President"
 "Somerset Bus Co., Inc.
 Mountainside, N.J.
 Mailing Address
 P.O. Box 659, Westfield, N.J.
 June 28, 1957
 Mr. Salvatore La Spada,
 1132 St. Louis Avenue,
 Hillside, N.J.
Dear Mr. La Spada:
This is to confirm the understanding of this company that your retainer as a technical advisor to this company and the amount agreed to be paid under the retainer agreement is part of the consideration for the acquisition of the stock of Green Flyer, Inc. by this company.
This letter will further confirm our complete understanding at the time of the negotiation of this agreement of retainer, that should this company fail to make any weekly payment due to you under said agreement, and should such default continue for a period of thirty days, that the entire unpaid balance due to you under said agreement of retainer will immediately become due and payable, that is to say, that the sum of $52,000 less the payments already made at the time of default will be due and payable to you.
 Yours very truly,
 Somerset Bus Co., Inc.
 By: F.J. Noll
 President"
*120 La Spada accordingly received the weekly payments until his death on September 17, 1957. Somerset thereafter continued the payments to his widow.
By decedent's last will and testament of which plaintiff is executor, the defendants Carmella Intarante and Concetta Intarante, his nieces, were to receive one-half of his estate. Carmella and Concetta contend that the balance due under the decedent's agreement with Somerset should be paid to his estate since the agreement in question was testamentary in nature and did not comply with the statute of wills. The executor thereupon filed the present complaint for a declaratory judgment. The executor, the widow and Somerset contend that the obligation is a contractual one and that the remaining payments are due the widow.
In entering summary judgment the court held that the contract was irrevocable, that it conveyed a bona fide equitable interest to Mrs. La Spada, that it was not testamentary in character, and that neither the estate of the testator nor the Intarantes had any interest therein. The judgment directed payment to be made to Mrs. La Spada.
We are called upon to determine whether an agreement for the sale of shares of stock which contains an arrangement for continued employment of the seller, and for payment of the consideration monies in installments during the seller's life, and thereafter in installments to his widow in the event that he dies before all installments are paid, is to be regarded as a valid contract enforceable by the seller's wife after his death, as not in contravention of the statute of wills. The matter is said to be one of novel impression in this State.
The rule is generally well settled that a contract creating a present obligation is not testamentary merely because the obligation is to be performed wholly or in part after the death of the obligor. 94 C.J.S. Wills § 140, p. 920. The fact that the contract provides that the time of the death of one of the parties determines the time for performance, does not of itself make the contract testamentary. A provision in a contract calling for installment *121 payments and, further, that in the event of creditor's death the balance due will be paid to a designated person, has been held not to be testamentary in nature. 94 C.J.S. Wills § 140, p. 922. In one of our earliest reported cases, Green v. Tulane, 52 N.J. Eq. 169, 173 (Ch. 1893), it was held:
"It is quite competent for one to make a settlement on another in praesenti reserving a life estate to himself, without bringing the affair within the definition of a testamentary disposition or of a gift causa mortis."
And, an assignment of a mortgage with a reservation of interest for the assignor's lifetime, was held not to be testamentary. Kohl v. Robbins, 12 N.J. Misc. 553, 173 A. 146 (Ch. 1934). Likewise, a gift of a mortgage on the grantor's property was held not to be testamentary, notwithstanding an agreement that it was not to be assigned and that no interest was to be paid to the grantee during the grantor's lifetime. Basse v. Raab, 138 N.J. Eq. 432 (E. & A. 1946).
In In re Koss', 106 N.J. Eq. 323 (E. & A. 1930), an employee had been a participant in a stock purchase plan under which she was permitted to designate a beneficiary to whom her interest in the plan would be paid in the event of her death. She died and the administrator of her estate claimed the property as passing under the intestate laws. The trial court held that the designation of a beneficiary under the plan was a testamentary disposition of property within the statute of wills. In re Koss, 105 N.J. Eq. 29 (Prerog. 1929). On appeal this finding was reversed and the beneficiary was held entitled to recover. The court held:
"Certainly, it seems upon the face of things that the rights of the respective parties arise in contract and must be settled by that law in accordance with the terms of the statute."
And further:
"Instead of regarding the designation of the beneficiary as a disposition of property, we regard it as a mere naming of a person for whose benefit a contract is made."
*122 Resolution of the present controversy therefore depends on whether the agreement in question represented a testamentary disposition of property by the decedent. If it did, compliance with the statute of wills was a prerequisite to its enforcement. N.J.S. 3A:3-2.
The trial court, in holding that the agreement was not testamentary in character, relied upon Franklin Washington Trust Co. v. Beltram, 133 N.J. Eq. 11 (Ch. 1943); Reynolds v. Danko, 134 N.J. Eq. 560 (Ch. 1944); and Legro v. Kelley, 311 Mass. 674, 42 N.E.2d 836 (Sup. Jud. Ct. 1942).
The appellants rely upon American University v. Conover, 115 N.J.L. 468 (E. & A. 1935), and Reed v. Bonner, 91 N.J.L. 712 (E. & A. 1917). In the former case the plaintiff sued upon an agreement reading as follows:
"In consideration of my interest in Christian Education and for and in consideration of the mutual promises of other subscribers to The American University Fund of $6,000,000 for endowment, buildings, betterments, equipment, liquidation, and expenses, I hereby promise and will pay to The American University, an educational corporation organized and existing by and under certain acts of Congress, the sum of $5,000, payment to be made to the treasurer of said American University at Washington, D.C.
This subscription is made upon the following terms and conditions:
1. This pledge shall become due upon the day of my decease and shall be paid within one year thereafter by my administrator or executor out of the proceeds of my estate.
To be known as the Sarah Jane and Ida Grant Memorial Scholarship Fund."
The court held:
"In the instant case, we conclude that the gift represented by the note is testamentary in its character. The donor retained absolute control and dominion over her estate during her life, and transfer of the dominion of the amount of the note was not to take place for one year after her death. We conclude that the undertaking constituted a testamentary disposition of the amount involved, and was invalid as not being made as required by the statute of wills."
Not quite to the same effect was Reed v. Bonner, where the testatrix loaned a sum of money to the defendant and *123 he sought to show by parol that the agreement was that he was to pay interest on it during her lifetime and upon her death the money was to be his. The court in its per curiam held that the trial judge had properly held that the defendant's testimony was not competent to prove the alleged transaction with the decedent. It went on to state that a testamentary disposition was involved which was invalid unless made in compliance with the statute of wills. The court also noted that "a sufficient test of the rights of the parties is to be found in the fact that the defendant (the donee) does not claim to have had title during the life of the testatrix," (91 N.J.L., p. 713) (Italics supplied).
While, at first blush, American University v. Conover and the cases cited therein would appear to be applicable to the facts sub judice, an examination of subsequent decisions of our courts raises grave doubt on this score. It is to be noted initially that the court, in deciding American University, considered that it was departing from the ruling in other states. Its decision has been generally described as being against the great weight of American authority. 1 A.L.R.2d, 1197-1205, 1207-1213. While it was decided in 1935, it appears not to have been extended or followed in any subsequently reported case in New Jersey. It was held to be inapplicable in More Game Birds in America, Inc. v. Boettger, 125 N.J.L. 97 (Sup. Ct. 1940), distinguished in Michaels v. Donato, 4 N.J. Super. 570 (Ch. Div. 1949), and explained in Eisenhardt v. Schmidt, 27 N.J. Super. 76 (Ch. Div. 1953).
An examination of the cases cited and of subsequent reported decisions indicates the extent to which it has fallen into disuse.
In O'Brien v. New England, etc., Insurance Co., 128 N.J. Eq. 590 (Ch. 1941), the insured had caused a life insurance policy to be issued. Payment of the proceeds was to be made in annual installments. The beneficiary named was his daughter, Helen O'Brien, if living, and if she predeceased him or thereafter died before the installments were *124 completed, the balance was to be paid to her surviving issue, if any, otherwise to his own surviving children. The right to change the beneficiary was not reserved and the beneficiary was excluded from the right to assign or anticipate any of the payments provided. Two children were subsequently born to Helen. Later, with the consent of his four daughters (including the beneficiary), the insured attempted to compel the company to issue a new paid-up policy in which the issue of Helen were not included as beneficiaries. The trial court declined to compel the company to issue the policy unless the beneficiaries were the same as in the original one. It held that the rights of the infants were not contingent but were vested, although defeasible by death before the time for enjoyment should arrive. (128 N.J. Eq. p. 594) Strict application of American University v. Conover would have called for a different result, yet it was not even cited.
In Franklin Washington Trust Co. v. Beltram, supra, certain United States Savings Bonds were issued in the name of the decedent as owner, "payable on death" to certain other named beneficiaries. No delivery of the bonds was made to the beneficiaries during decedent's lifetime and they were found in her possession when she died. The question involved was whether the bonds were the property of the beneficiaries or whether they passed to the estate of the decedent. The court held that the Treasury regulations which defined the rights of the parties reflected a contract obligation of the United States to the owner and to the beneficiaries to the effect that the owner lost title to the bonds by her death and the beneficiaries thereupon became the sole and absolute owners. The appellants seek to distinguish this ruling on the ground that federal statutes and regulations were involved. The court disposed of this distinction:
"Even if the decision were not controlled by the supremacy of Federal law, if the bonds had been issued by a private corporation, the result would in my opinion be the same. No New Jersey statute *125 or policy forbids effect to a contract to pay at a stated time, or earlier on demand, to A, but if A dies within the time or before demanding the money, then to pay B. There is nothing of a testamentary character in such a contract. It is an instance of a contract partially for the benefit of a third party, and on which a right of action accrues to the third party. Restatement Contr. sec. 135. It is distinguishable from a savings bank account in that the cause of action of the third party beneficiary as against the promissor is not dependent on possession of a pass book or other document of title. Even in savings bank cases, the present trend of legislation and decision favors the beneficiary or donee. Hickey v. Kahl, 129 N.J. Eq. 233; Lester v. Guenther, 132 N.J. Eq. 496." (133 N.J. Eq. p. 14)
In Reynolds v. Danko, supra, the trial court again had occasion to deal with war savings bonds which had been issued in the name of the decedent as registered owner, payable on death to his friend, the defendant. It was there held that ownership of the bonds turned upon the proper application of the settled rules of the law of contracts, that there was in effect an enforceable contract between the decedent and the Government by the terms of which the registered beneficiary acquired a present vested, though defeasible, interest contemporaneous with the superior rights of the decedent, which upon his death would become an indefeasible ownership. (134 N.J. Eq., p. 563)
In Michaels v. Donato, supra, a partnership agreement provided that upon the death of one of the partners his interest therein would become the property of the surviving partner upon payment of a specified sum. The estate of the deceased partner sought an accounting and dissolution of the partnership in violation of the agreement. The court held that the partnership agreement created a bona fide equitable interest in the property of the partnership and that the transfer of the assets of the partnership to the surviving partner under the agreement was not violative of the statute of wills. The trial court distinguished American University v. Conover in the following language:
"* * * Of course, if the provision is testamentary in nature, it is void, because not executed in conformity with the statute of *126 wills. Reed v. Bonner, 91 N.J.L. 712 (E. & A. 1921); United States Trust Co. v. Giveans, 97 N.J.L. 265 (E. & A. 1921); American University v. Conover, 115 N.J.L. 468 (E. & A. 1935).
`The confusion results from the attempt to attach to the transaction characteristics of both a will and a contract. These characteristics are, however, entirely distinct. A contract operates immediately to create a property interest in the premises while a will is revocable, or, more properly speaking, inoperative or ambulatory until the death of the testator, at which time it operates to create a property interest in the beneficiary.' Yale Law Journal, Vol. 27, Part 1, p. 542; 57 Am. Jur., Wills, sec. 15, page 48. The undertaking of a party under a contract is made in consideration of something to be paid or done by or on behalf of the other party, so that the obligation to and the right to require performance are reciprocal. A contract creates a present, enforceable and binding right over which the promisor has no control without the consent of the promisee, while a testamentary disposition operates prospectively. 57 Am. Jur., Wills, sec. 40, page 67. An instrument which does not pass any interest until after the death of the maker is essentially a will. But not every instrument which provides for performance at or after death is testamentary in character. If the instrument creates a right in the promisee before the death of the testator, it is a contract. `A will is dispositive; a contract promissory. A will is gratuitous; while a contract * * * requires consideration.' 1 Page, Wills, Lifetime Ed., sec. 83, page 179. `There is nothing in the statute of wills that prevents the creation by contract of a bona fide equitable interest in property and its enforcement after the death of a contracting party, even though the date of death is agreed upon as the time for transfer of the legal title.' Legro v. Kelley, 311 Mass. 674, 42 N.E.2d 836, 837 (Sup. Ct. Mass. 1942)."
In Eisenhardt v. Schmidt, 27 N.J. Super. 76 (Ch. Div. 1953), Judge (now Justice) Haneman, had occasion to pass upon an agreement reading as follows:
"This is to certify that I, Clara V. Schmidt, paid the Home Owners Loan, 2 Park Avenue, New York City, the sum of $1174.24. Said sum was advanced by George Eisenhardt, 135 S. Florida Avenue, Atlantic City, N.J.
In case of my death, the sum of $1174.24, plus 6% interest from October 9th, 1947, is to be paid to George Eisenhardt out of the property sale of 1420 Madison Avenue, Venice Park, N.J. on which he paid the money."
After reviewing American University v. Conover and the cases there cited, Judge Haneman held that the words *127 "testamentary disposition" as used therein had reference to gifts rather than contracts, and that a contract did not take on a testamentary character merely because performance was postponed until the death of the promisor. He went on to hold that since the instrument before him vested in the plaintiff an irrevocable right to payment, arising out of a contract which was supported by consideration, it was valid and enforceable. Cf. McKinnon v. McKinnon, 56 F. 409 (8 Cir. 1893).
In Kerrigan's Estate v. Joseph E. Seagram & Sons, 199 F.2d 694 (3 Cir. 1952), the promisor purchased a business from the owners, the consideration to be paid in annual installments over a ten-year period. The contract provided that in the event that one of the owners died during the period of the annual payments, all the remaining installments would be paid to the survivor. The Court of Appeals held that the agreement did not involve a testamentary disposition and permitted it to be enforced according to its terms. The facts in this case, while they involved New York law, bear a marked similarity to those in the case sub judice. The distinction urged by the present appellants, that consideration flowed from the partners there, while there was none from Mrs. La Spada, is more fanciful than real. There appears to be no valid reason why the same rule should not apply equally to both donees and those who pay consideration, since a donee beneficiary of a contract may enforce it equally with a contracting promisee.
In Robinson's Women's Apparel v. Union B & T Co., 67 F. Supp. 395 (D.C.S.D.N.Y. 1946), which involved California law, upon the sale of certain goods the purchase price, or the unpaid balance thereof, was to be paid to a third party in the event of the death of the seller. The court (Rifkind, D.J.) held that the contract was enforceable at the hands of the third-party beneficiary though she was a donee rather than a creditor. In so holding it was pointed out that were agreements of the type stated to be held invalid as testamentary dispositions, all life insurance *128 contracts where the sum due was payable to a named beneficiary instead of to the insured's estate, would likewise be subject to the statute of wills.
We conclude that American University v. Conover is not applicable to the facts before us. This renders it unnecessary for us to determine whether it was intended that its application be restricted to post mortem gifts, as suggested in Eisenhardt v. Schmidt, supra.
An otherwise valid and binding contract for the payment of monies due or to become due to the promisee is not invalidated because one of its provisions calls for payment of the balance due to a third party, in the event of the promisee's death before receiving payment in full. Franklin Washington Trust Co. v. Beltram, supra; Reynolds v. Danko, supra; Legro v. Kelley, supra; Michaels v. Donato, supra; Kerrigan's Estate v. Joseph E. Seagram & Sons, supra. Thus, where a substantial element of the decedent's purpose in making the contract relates to objectives to be accomplished during his lifetime (here the sale of his business and an assurance of an income of $100 a week for ten years) an incidental provision covering the contingency of his death prior to payment in full will not be defeated as a testamentary disposition. Reference to the agreement before us and the surrounding facts and circumstances, indicates clearly that in making the provision for his wife the decedent was entering into a present binding contract rather than a testamentary disposition, necessarily revocable, which was not to become effective until his death. No suggestion is made that by reason of health or otherwise, he contemplated making a testamentary disposition at the time in question. The contract as embodied in the agreement and letter, and accepted and acted upon by him, provides by its own terms that it was irrevocable. Cf. Restatement, Contracts, sec. 142. It conveyed a present equitable right upon Mrs. La Spada as a third party beneficiary, which ripened into full ownership of the balance due upon her husband's death. This right was enforceable by her regardless of consideration. *129 N.J.S. 2A:15-2; Restatement, Contracts, secs. 133(a) and 135(a).
Payment of the installments to her could only be defeated by prior payment to the decedent, either in installments over the ten-year period or, in case of Somerset's default, in a lump sum. The contract was valid and enforceable, and the weekly payments became payable to Mrs. La Spada upon her husband's death.
The judgment of the Law Division is affirmed.